UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers:)** ORDER RE: COURT TRIAL HELD NOVEMBER 15, 2013

REQUEST FOR JUDICIAL NOTICE (Dkt. #76, filed November 16, 2013)

## I.    INTRODUCTION

Plaintiff C.L., through his mother V.L., brought this action in this Court on November 19, 2012, against the Lucia Mar Unified School District (the "District"). Plaintiff seeks to reverse a decision of the California Office of Administrative Hearings ("OAH").[1]  The OAH decision ("OAHD") found that the District properly implemented plaintiff's individualized education plan ("IEP") dated January 18, 2011, and also found that the IEP offered to plaintiff on February 3, 2012, was an offer of a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1415 et seq. ("IDEA").  OAHD Legal Conclusions ¶¶ 1-22.  Plaintiff seeks reimbursement for private school placement, behavioral support at the private school, and 50 hours of private tutoring.  Second Amended Complaint ("SAC") ¶ 92.

Plaintiff filed a motion for leave to submit additional evidence on August 13, 2013, dkt. #39, and the District filed an opposition on August 26, 2013, dkt. #46.  The Court granted plaintiff's motion by order dated August 30, 2013, but granted the District leave to renew its objections to the additional evidence at the time of trial.  Dkt. #51.  Plaintiff filed an opening trial brief on September 23, 2013.  Dkt. #73.  The District filed an

---

[1] The OAH decision appears in the Administrative Record ("AR") at pages 338 to 378.  The OAH decision pertains to OAH case numbers 2011120452 and 2012030796.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

opposition on October 22, 2013, dkt. #74, and plaintiff replied on November 7, 2013, dkt. #75. The Court held a bench trial on November 15, 2013, and thereafter took the matter under submission. Dkt. #77. The Court also granted the District leave to file a request for judicial notice of the OAH decision in OAH case number 2013010704. Id. The District filed that request on November 16, 2013, dkt. #76, and plaintiff filed a response on November 25, 2013, dkt. #78. After considering the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

The IDEA provides federal funds to assist state and local agencies in educating children with disabilities. 20 U.S.C. § 1412; Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993). The purpose of the IDEA is to provide all children with disabilities "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living; to ensure that the rights of children with disabilities and parents of such children are protected; and to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities . . . ." 20 U.S.C. § 1400(d). This purpose is implemented through development of individualized education plans ("IEP"), which are crafted by a team including a student's parents, teachers, and the local educational agency. 20 U.S.C. § 1414(d). The IEP prepared by the team contains the student's current level of performance, annual goals, short and long term objectives, specific services to be provided and the extent to which the student may participate in regular educational programs, and criteria for measuring the student's progress. Id. The IDEA requires that educators also guarantee certain procedural safeguards to children and their parents, including notification of any changes in identification, education and placement of the student, as well as permitting parents to bring complaints about matters relating to the student's education and placement, which may result in a mediation or a due process hearing conducted by a local or state educational agency hearing officer. 20 U.S.C. § 1415(b)-(i).

Under 20 U.S.C. § 1415(I), "[a]ny party aggrieved by the findings and decision" made pursuant to a state's administrative hearings process for resolving complaints made under the IDEA may "bring a civil action . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). The burden of persuasion in such an action rests with the party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

challenging the administrative decision.  L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 910 (9th Cir. 2008).  In any action brought under § 1415, "the court shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  As the Supreme Court explained in Board of Education v. Rowley, 458 U.S. 176 (1982), "a court's inquiry in suits brought under [§ 1415] is twofold.  First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits."  Id. at 207.

Courts review state administrative decisions regarding the appropriateness of a special education placement de novo.  County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996); see also Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993) ("[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review.").  When applying de novo review, however, a district court must give "due weight" to judgments of educational policy, and "should not substitute their own notions of sound educational policy for those of the school authorities which they review." Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987).  Deference to an administrative officer is appropriate in matters arising under the IDEA "for the same reasons that it makes sense in the review of any other agency action–agency expertise, the decision of the political branches to vest the decision initially in an agency, and the costs imposed on all parties of having still another person redecide the matter from scratch." Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

The amount of deference appropriate in a particular case is within the reviewing court's discretion.  Gregory K, 811 F.2d at 1311.  When determining the degree of deference to grant a hearing officer's findings, a particularly important factor is the thoroughness with which they have been reached.  Capistrano, 59 F.3d at 891.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|------------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

## III.   FACTUAL FINDINGS

The OAH decision below contains detailed and thorough factual findings.  See generally OAHD.  The Court finds that the factual findings in the decision below are accurate, and adopts them as they are set out.  To provide context for the Court's decision, the Court summarizes the relevant facts.

At the time of the administrative hearing, which took place in late May and early June 2012, plaintiff was nine years old.  OAHD Factual Findings ¶ 1.  He is eligible for special education as a child with autistic-like behaviors and also has a specific learning disability, as well as a speech and language impairment.  Id.  Plaintiff received home behavioral services when he first came to the District in 2005.  Id. ¶ 6.  At that time, plaintiff's behavior included frequent tantrums and attempts to run away from his caregivers.  Id.  At the time of the hearing in 2012, plaintiff's behaviors included noncompliance, outbursts such as pushing things off of his desk, as well as verbal and physical aggression.  Id. ¶ 7.  Plaintiff has had a behavioral support plan ("BSP") or behavioral intervention plan ("BIP") included in his IEP since 2007.

### A.   The 2010-11 School Year

Plaintiff attended Nipomo Elementary School in the District during the 2010-11 school year.  Id. ¶ 8.  He attended a special day class for most of the day, and attended a general education class for the last part of the day.  Id.  In October 2010, plaintiff filed a complaint against the District with the Office of Administrative Hearings.  Id. ¶ 9.  The parties entered into a settlement agreement resolving that proceeding on January 13, 2011, and developed an IEP on January 18, 2012 pursuant to the terms of the settlement agreement.  Id.

The IEP provided for plaintiff's placement at Lange Elementary School.  Id. ¶ 10.  The IEP further provided for plaintiff's placement in a general education program for all but 115 minutes of each day.  Id.  For the rest of the day, plaintiff was to be placed in a special education classroom called a "resource specialist program" classroom, with a credentialed special education teacher.  Id.  The IEP also required that plaintiff receive a full-time instructional aide, five 25-minute sessions of speech and language services each month, and 30 minutes of occupational therapy each week.  Id.  The IEP also included a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

BSP.  <u>Id.</u>  Additionally, the IEP provided that plaintiff would attend an extended school year program in the summer of 2011.  <u>Id.</u> ¶ 24.

The settlement agreement and the IEP required that plaintiff's instructional aide receive 25 hours of training.  <u>Id.</u>  ¶ 11.  At least six of those were to be provided by a nonpublic agency supervisor with a master's degree.[2]  <u>Id.</u>  The remainder of the training was to be provided by an autism behavior specialist with a master's degree who was employed by the District.  <u>Id.</u>  In the following month, the agency supervisor and the District's specialist were each required to provide three hours per week and six hours per month of additional training.  <u>Id.</u>  Thereafter, the autism behavior specialist was to provide ongoing training to the instructional aide for 60 minutes per week, and the agency supervisor was to provide one hour of supervision and training each month.  <u>Id.</u>

The BSP included in the January 18, 2011 IEP was designed to address plaintiff's noncompliant behaviors, as well as physical and verbal aggression.  <u>Id.</u> ¶ 12.  Plaintiff exhibited these behaviors regularly at Nipomo by, among other things, screaming, crying, throwing objects such as desks and chairs, and hitting and kicking other students.  <u>Id.</u>  The BSP called for the use of replacement behaviors, such as asking to take a break outside the classroom, that plaintiff would learn to use in place of the verbal and physical aggression.  <u>Id.</u> ¶ 13.  The BSP provided for an incentive system to encourage the replacement behaviors.  <u>Id.</u>  Plaintiff would receive coins throughout the day in exchange for engaging in positive behaviors, and was permitted to exchange these coins for toys and other items at the end of each day.  <u>Id.</u>

Plaintiff's mother consented to the IEP in its entirety, and plaintiff began attending Lange on January 25, 2011.  <u>Id.</u> ¶ 14.  Jacqueline Williams, an autism behavior specialist employed by the District, and Stephanie Dale of the nonpublic agency Autism Partnership provided the IEP-mandated training to plaintiff's instructional aide.  <u>Id.</u> ¶ 15.  At an IEP team meeting on February 24, 2011, plaintiff was reported to be doing well at Lange under the new IEP.  <u>Id.</u> ¶ 17.

---

[2] California law provides that a certified "nonpublic" agency may provide special education services to children enrolled in the California public schools.  <u>See, e.g.,</u> Cal. Educ. Code § 56365.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|----------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

The settlement agreement also called for the preparation of a functional analysis assessment report. Id. ¶ 18. The District contracted with Dr. Randall Ball to prepare this report. Id. In preparing the report, Ball interviewed plaintiff's mother, as well as his teachers, autism behavior specialist Jacqueline Williams, and the school psychologist. Id. He also reviewed school records as well as plaintiff's psychological, medical, and behavioral records. Id. Ball also observed plaintiff at school on multiple occasions in March 2011. Id. Finally, Ball reviewed plaintiff's IEP as well as his current and former BSP's, and data collected by the District regarding plaintiff's behavior. Id. Ball's report described "functionally equivalent replacement behaviors" that could be used to target plaintiff's noncompliant and aggressive behaviors. Id. ¶ 20. The report also identified environmental antecedents to plaintiff's targeted behaviors, as well as potential indicators for when plaintiff was on the verge of engaging in an aggressive or noncompliant behavior episode. Id. The report concluded by recommending that a BIP be developed based on the then-current BSP. Id. ¶ 21.

In response to Ball's report, an IEP team meeting occurred on March 31, 2011. Id. ¶ 22. In the subsequent weeks, Williams, Dale, and Ball collaborated to develop a BIP based on the current BSP and the findings contained in Ball's functional analysis assessment report. Id. The IEP team met on June 8, 2011, to review the proposed BIP developed in consultation with Ball. Id. ¶ 23. Plaintiff's mother and her advocate closely reviewed the proposed BIP at the meeting. Id. Several changes were made during the meeting, and plaintiff's mother then agreed to the BIP as amended at the meeting. Id. The BIP incorporated Ball's report by reference. Id.

The 2010-11 school year ended on June 10, 2011. Id. ¶ 24. Notwithstanding the January 18, 2011 IEP, plaintiff did not attend the extended school year program. Id. The extended school year program would have been an "optimal time" to begin implementing the new BIP, because the program did not involve the additional stressor of a general education environment. Id.

### B. The 2011-12 School Year

The 2011-12 school year began on August 18, 2011. Id. ¶ 25. Brenda Parker was no longer available to serve as plaintiff's instructional aide, so the District hired Rianna Martinez to serve in that position. Id. Martinez received training that exceeded the training provided to Parker, which is described above. Id. ¶ 26. The BIP that was in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|----------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

place for this school year replaced the coin incentive system with a tally sheet. Id. ¶ 28. Martinez would maintain the tally sheet throughout the day, and plaintiff would receive tally marks for engaging in positive behaviors. Id. Additionally, unlike with the BSP in place for the latter half of the 2010-11 school year, plaintiff would lose tally points or suffer other consequences if he engaged in "extreme maladaptive behaviors." Id. Plaintiff's mother objected to the imposition of consequences, so that component of the BIP was not implemented at the outset of the school year. Id.

The first few days of the school year went "relatively smoothly." Id. ¶ 29. On August 26, 2011, plaintiff had to be restrained after he kicked and broke a bucket holding playground balls, broke off branches from a bush and threw them as well as rocks at a classroom window, and hit and kicked staff. Id. ¶ 30. Similar incidents occurred "more than once" after August 26, 2011, but plaintiff only required restraint once more before he left Lange Elementary School on September 23, 2011. Id. Plaintiff became verbally and physically intimidating to his classmates, calling them names and threatening to punch them. Id. at 352. Students in plaintiff's general education classroom became fearful of plaintiff as a result of this behavior, as well as the fact that plaintiff was much larger than his other third grade classmates–plaintiff weighed between 120 and 150 pounds, and was approximately five feet, one to three inches tall. Id. ¶¶ 31-33. According to Barbara Frasher, plaintiff's teacher in the resource specialist program classroom during the 2010-11 and 2011-12 school years, plaintiff's behavior was markedly worse when he returned to school in August 2011 than it was during the latter half of the prior school year. Id. ¶ 31.

Dale and Ball each came to observe plaintiff during this period, and noted that, by the week of September 19, 2011, plaintiff was refusing to do virtually all classwork, and instead, when not engaging in disruptive behavior, would sit at his desk and read a personal book. Id. ¶ 34. An IEP team meeting occurred on September 23, 2011, to attempt to address plaintiff's difficulties at Lange. Id. ¶ 35. At the meeting, District personnel and Ball explained to plaintiff's mother that it would be best for plaintiff to be transferred to a special day class at Dana Elementary School that would focus on behavioral problems. Id. ¶ 36. Plaintiff would also spend a portion of the day in a general education classroom. Id. District personnel and Ball explained that plaintiff would derive more educational benefit from this new arrangement because the special day class at Dana was small and offered greater adult support than a general education

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

classroom or the resource specialist program classroom that plaintiff attended for part of the day at Lange.  Id. ¶¶ 36-37.

Plaintiff's mother agreed to observe the special day class at Dana.  Id. ¶ 41.  In the meantime, plaintiff was to receive "home-hospital" services for the next two weeks.  Id. "Home-hospital" services in this context means that plaintiff would receive educational services in a home setting, from an appropriately credentialed teacher.  Id. ¶ 41 n.21.  The nonpublic agency Tri-Counties offered to provide in-home behavioral services for plaintiff, but his mother declined them.  Id. ¶ 46.

Two more IEP team meetings occurred, on October 4, 2011, and October 18, 2011. Id. ¶¶ 45, 47.  Plaintiff's mother agreed to the placement at Dana, with 60 percent of the school day spent in a general education classroom, and 40 percent of the day spent in the special day class.  Id. ¶ 47.  She also agreed to the implementation of a consequence system as part of plaintiff's BIP.  Id.  Ball repeatedly informed the IEP team that, while the consequence system was necessary in order to maximize the BIP's effectiveness at improving and controlling plaintiff's behavior, its implementation would likely lead to an escalation and intensification of plaintiff's behavior episodes in the short term.  Id. ¶¶ 45, 47.

Plaintiff began attending Dana on October 20, 2011.  Id. ¶ 48.  That day was uneventful.  Id.  However, a prolonged behavioral incident occurred on the following day that resulted in plaintiff being restrained by school staff and subsequently handcuffed by a sheriff's deputy that was present on the school grounds to give a presentation to another class.  Id. ¶¶ 49-61.

The incident began mid-morning on that day, when plaintiff was in his general education class.  Id. ¶ 49.  On that day, Williams was present to observe Martinez and plaintiff, and to conduct additional training for Martinez.  Id.  Plaintiff was given a math assignment, which he refused to work on.  Id.  He began fidgeting and making noises, and also requested to go outside to the playground to retrieve his sweatshirt.  Id. Plaintiff's behavior gradually escalated, with interspersed periods in which plaintiff would partially calm down.  Id. ¶¶ 49-61.  Plaintiff attempted to run away from staff and then charged at them while swinging his water bottle.  Id. ¶ 54.  Plaintiff had to be restrained and taken to an empty room at Dana called the "safe room."  Id. ¶¶ 55-56. After plaintiff appeared to de-escalate, staff allowed him to leave the safe room, at which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

point he "bolted" from them. Id. ¶ 58. Staff returned plaintiff to the safe room, where he began banging his head against the wall. Id. ¶ 59.

Staff then contacted a sheriff's deputy who was present on campus to make a presentation to another class was asked to come assist with the situation and attempt to prevent plaintiff from harming himself. Id. ¶ 60. The deputy approached the student in the safe room, and asked him to sit cross-legged against a wall. Id. ¶ 61. Plaintiff began banging his head against the wall. Id. The deputy responded by handcuffing plaintiff, and explained to him that she was doing so in order to prevent plaintiff from hurting himself. Id. Plaintiff's mother arrived shortly thereafter, and asked the deputy to remove the handcuffs. Id. The deputy did so, and plaintiff's mother left the school campus with plaintiff. Id.

An IEP team meeting occurred on November 2, 2011, with the purpose of discussing the October 21, 2011 incident. Id. ¶ 62. Ball presented the IEP team with a modified BIP, which called for a new reinforcement method and a consequence of losing recess if plaintiff did not comply with a direction after being warned that his failure to comply would result in the loss of recess. Id. Plaintiff's mother asked at the meeting that the modified BIP provide that plaintiff would never be restrained. Id. ¶ 63. District personnel explained that this would not be feasible, since restraint could become necessary as a last resort to prevent plaintiff from injuring himself. Id. Plaintiff's mother stated that she would prefer to home-school plaintiff if the District allowed for the possibility that plaintiff would be restrained. Id. The IEP team and plaintiff's mother agreed to a second IEP team meeting on November 18, 2011, and further agreed that plaintiff would receive home instruction until that time. Id. The District also offered to provide 120 minutes of counseling for plaintiff, to address any trauma arising from the October 21, 2011 incident. Id. Plaintiff's mother never contacted the District to arrange for this counseling. Id. at n.27.

Plaintiff's mother canceled the November 18, 2011 IEP team meeting on November 15, 2011. Id. ¶ 63. The District noticed a second meeting for December 12, 2011, but plaintiff's mother did not respond to the notice. Id. ¶ 64. Shortly thereafter, plaintiff's mother informed the District that she had retained legal counsel and would not be attending the December 12 meeting. Id. Plaintiff filed his due process complaint with the Office of Administrative Hearings on December 14, 2011. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

After plaintiff filed his complaint, District personnel sent plaintiff's mother a letter, suggesting nine different dates for an IEP team meeting.  Id. ¶ 91.  Plaintiff's attorney responded that plaintiff's mother would not be participating in any more IEP team meetings.  Id.  On February 3, 2012, the District held an IEP team meeting in the absence of plaintiff's mother or plaintiff's attorney.  Id. ¶ 92.  The IEP developed at this meeting contained a BIP based on the prior BIP, with modifications focused on preventing another incident similar to the October 21, 2011 incident at Dana Elementary School.  Id. ¶¶ 92-93.

The placement and services recommended in this IEP are set forth in the Office of Administrative Hearing decision.  See id. ¶ 95.  The Court does not set out the complete description of the IEP here, but notes some of its key aspects.  Plaintiff would be placed in a special day class for 155 minutes of each day, and a general education class for the remainder of the day.  Id.  This placement would occur after the conclusion of a four-week transition period, which would begin with plaintiff spending 100 percent of the day in the special day class, and gradually increasing the amount of time spent in the general education classroom.  Id.  Plaintiff would also receive speech and language services, occupational therapy, individualized adult support for implementation of the BIP, and consultation services with the District's autism behavior specialist.  Id.

The District mailed a copy of this IEP to plaintiff's mother on February 7, 2012, but received no response.  Id. ¶ 96.  On March 2, 2012, plaintiff's attorney informed the District that plaintiff's mother was enrolling plaintiff in a private school, and would be seeking reimbursement from the District for the tuition.  Id. ¶¶ 75-76.  The private school placement is at a Roman Catholic school in Santa Maria, California.  Id.  At the time of the due process hearing, plaintiff was in a third grade class of 31 children, all typically developing.  Id.  The classroom teacher does not have a special education credential.  Id. Plaintiff's mother or plaintiff's aunt is constantly present with plaintiff in this placement. Id.  When plaintiff becomes frustrated or his behavior shows signs of escalating, his mother or aunt removes him from the classroom for a break.  Id.  They also modify his work when he appears frustrated.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

## IV.   ANALYSIS

The parties presented three issues for decision before the Office of Administrative Hearings.  OAHD at 2-3.  Plaintiff presented two issues, as follows: (1) whether the District denied plaintiff a FAPE from August 18, 2011, by failing to implement the IEP developed on January 18, 2011, and subsequently amended; and (2) whether the District denied plaintiff a FAPE from August 18, 2011, to the present because it failed to fade plaintiff into a general education classroom, in conformity with the IEP, and instead withdrew plaintiff from the general education environment, thereby failing to provide plaintiff with an education in the least restrictive environment.  Id.  The District presented the single issue of whether the District's February 23, 2012 IEP offer was an offer of a FAPE in the least restrictive environment ("LRE").  Id.  Before the OAH, plaintiff bore the burden of persuasion as to the two issues that he presented, and the District bore the burden as to its sole issue.  See Schaffer v. Weast, 546 U.S. 49, 62 (2005); Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 820 (9th Cir. 2007).  However, as stated above, plaintiff now bears the burden of persuasion on all three issues because he is the party challenging the administrative decision.  See L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 910 (9th Cir. 2008).  The Court addresses the ALJ's determination on each issue in turn.

### A.   Implementation of the January 18, 2011 IEP

Plaintiff's first issue presented to the administrative law judge ("ALJ") in the OAH was whether the District denied him a FAPE by failing to implement the January 18, 2011 IEP.  A material failure to implement an IEP constitutes a denial of a FAPE, thereby giving rise to a claim under the IDEA.  Van Duyn, 502 F.3d at 821-22.  A material failure occurs when there is "more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP."  Id.  Plaintiff contends that the ALJ erred by concluding that the District properly implemented the January 18, 2011 IEP.  He challenges the District's implementation of the IEP on three grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

     1.     Failure to Implement the BIP

     First, plaintiff argues that the District failed to implement the BIP, which was a component of the IEP. Opening Br. 11-13. In particular, plaintiff argues that District personnel presented plaintiff with situations which were known to cause plaintiff to engage in maladaptive behavior. Id. at 13. The Court rejects this argument because it is unsupported by the ALJ's findings, expert testimony, or other evidence. The District presented a proposed BIP to plaintiff's mother at an IEP team meeting that occurred on June 8, 2011. OAHD Factual Findings ¶¶ 22-23. The proposed BIP was developed based on the functional analysis assessment prepared by Ball in the preceding months. Id. Plaintiff's mother agreed to this BIP after changes were made that the IEP team meeting. Id. The BIP differed from the BSP in place during the 2010-11 school year. Id. ¶ 28. In this regard, the BIP replaced the BSP's coin incentive system with a tally sheet, and provided for plaintiff to suffer consequences, such as the loss of tally marks or recess time, if he engaged in "extreme maladaptive behaviors." Id. The ALJ found that Dale, Williams and Ball testified "persuasively" that they observed plaintiff's instructional aide Rianna Martinez while she was working with plaintiff, and that Martinez was implementing the BIP "with fidelity." Id. ¶ 39. This conclusion is bolstered by the fact that the IEP team met three times during September and October 2011 to address the fact that plaintiff was not doing well in his placement at Lange, and to develop changes to the BIP that would increase its effect. Id. ¶¶ 35, 45, 47.

     With respect to plaintiff's contention that District personnel failed to implement the BIP because they presented plaintiff with behavioral antecedents known to trigger maladaptive behavior, Ball, Dale, and Williams presented evidence at the due process hearing that the purpose of the BIP is to teach a child positive replacement behaviors that he can use in lieu of maladaptive behaviors. Id. ¶ 68. According to Ball, Dale, and Williams, this process will not succeed if the child is never presented with behavioral antecedents that have a tendency to trigger maladaptive behaviors. Id. Although plaintiff bore the burden of persuading the ALJ, as well as this Court, on this issue, plaintiff presented no expert testimony to rebut the testimony of Ball, Dale, and Williams. Id. at 360. Rather, before the ALJ, plaintiff presented only the testimony of his mother and the arguments of counsel. Id. Plaintiff presented no additional evidence to this Court that provides a basis for questioning the ALJ's finding that the District properly implemented

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|------------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

plaintiff's BIP.  The Court therefore finds that the ALJ did not err in determining that the District properly implemented plaintiff's BIP.

2.      Failure to Implement the IEP During Home Instruction

Plaintiff next argues that the District failed to implement the January 18, 2011 IEP because it did not provide access to a special education teacher, instructional aide, occupational therapy, or speech and language therapy during the time that plaintiff was receiving home-hospital instruction.  Opening Br. 14-15.  This argument is unavailing for three reasons.

First, plaintiff did not raise this argument before the OAH, as is conceded in his reply.  Reply Br. 9 ("Admittedly, plaintiff did not argue implementation of services *other than* behavior supports in the home."); see also OAHD Factual Findings ¶ 77 ("Student appears to argue that the District should have been implementing the BIP even when Student was not attending school and was receiving home-hospital services.").  This argument accordingly fails.  See Marc M. ex rel. Aidan M. v. Haw. Dep't of Educ., 762 F. Supp. 2d 1235, 1241 (D. Haw. 2011) (stating that "arguments not raised in front of a hearings officer cannot be raised for the first time on appeal to the district court").  Therefore, plaintiff may only argue that the District failed to implement the IEP during home instruction by failing to provide behavioral services.  This argument also fails for the separate reason that plaintiff's mother declined in-home behavioral services.  OAHD Factual Findings ¶ 46.[3]

Second, the services provided in an IEP are tied to a particular location.  In this regard, an IEP must include the "anticipated frequency, location, and duration of . . . services."  20 U.S.C. § 1414(d)(1)(A)(i)(VII) (emphasis added); see also Madison Metro. School Dist. v. P.R. ex rel. Teresa R., 598 F. Supp. 2d 938, 949 (W.D. Wis. 2009) (noting that location can be a "critical element in determining whether an [IEP] is an adequate

---

[3] Additionally, there was "no evidence whatsoever [before the OAH] that Student had behavioral issues when receiving his home-hospital schooling, and his mother did not testify that he currently, or earlier in the 2011-2012 [school year], experienced behavioral problems in the home."  OAHD Factual Findings ¶ 77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|----------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

offer of a [FAPE]"). Special education provided in the home is limited to students for whom the IEP team recommends home instruction. 5 Cal. Code Regs. § 3051.4. The January 18, 2011 IEP, as modified throughout 2011, did not purport to offer or recommend home instruction, but instead was premised on the assumption that plaintiff would receive instruction at a school located in the District. See OAHD Factual Findings ¶¶ 10, 23-24, 36; AR 1054-85. The evidence presented to the ALJ showed that home instruction was provided to plaintiff beginning on September 23, 2011, as an interim measure in order to provide plaintiff's mother with the opportunity to observe the special day class at Dana Elementary School. Id. ¶ 41. Similarly, plaintiff received home instruction after the October 21, 2011 incident at Dana as an interim measure while the IEP team determined an appropriate course action. Id. ¶ 63. Plaintiff cites no authority, and the Court is aware of none, for the proposition that the IDEA required the District to transplant the entirety of the services offered in plaintiff's IEP, which contemplated in-school instruction, to plaintiff's home environment during the interim periods when plaintiff's mother and the IEP team were considering changes to plaintiff's educational placement.

Third, even if it could be said that the District failed to implement the IEP while plaintiff was receiving home instruction, such failure was not material, and therefore did not violate the IDEA. See Van Duyn, 502 F.3d at 819. In this regard, reasonable delays incurred in implementing an IEP while a school district conducts assessments and negotiates with parents are not material. See J.S. v. Shoreline Sch. Dist., 220 F. Supp. 2d 1175, 1189 (W.D. Wash. 2002) (finding that implementation delay that occurred at "behest of the parents . . . was reasonable and was not . . . error"); cf. Tracy N. v. Haw. Dep't of Educ., 715 F. Supp. 2d 1093, 1112 (D. Haw. 2010) (finding that delay in determining student's educational placement was reasonable because there were "ongoing discussions regarding placement in response to [the student's mother's] concerns, a reassessment of [the student's] cognitive and academic skills, and a reevaluation of [her] behavior").

Here, any delays in implementation of the IEP were reasonable, and therefore not material, for reasons similar to those set forth in J.S. and Tracy N. As stated above, plaintiff received home instruction for approximately one month between September 23, 2011, and October 20, 2011, while plaintiff's mother and the District discussed and negotiated plaintiff's potential placement at Dana as a replacement for his placement at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

Lange, and received home instruction after the incident of October 21, 2011, until the time that plaintiff retained counsel and filed a due process complaint with the Office of Administrative Hearings in December 2011.  During that period, the District held an IEP team meeting on November 2, 2011, and made multiple, ultimately unsuccessful attempts to schedule additional IEP team meetings with plaintiff's mother.  OAHD Factual Findings ¶¶ 62-64.  Finally, after plaintiff filed the due process complaint, the District continued to attempt to secure the involvement of plaintiff's mother in an IEP team meeting.  Id. ¶ 91.  Since these (potential) delays occurred during ongoing attempts to respond to plaintiff's mother's concerns and determine the appropriate placement for plaintiff in response to the recent events of October 21, 2011, they do not constitute material IEP implementation failures.  Cf. Tracy N., 715 F. Supp. 2d at 1112.[4]

3.      Failure to Meet Goals

Finally, plaintiff argues that he did not meet any of the goals set forth in the January 18, 2011 IEP, and that this failure is powerful evidence of the District's failure to implement the IEP.  Opening Br. 11.  This argument is contradicted by the OAHD's finding that plaintiff met his two goals in reading as well as his goals in spelling and writing, and that he came close to meeting his goals in the areas of "ending peer interactions and social conflict."  OAHD Legal Conclusions ¶ 98.  Moreover, to the

---

[4] Another factor weighing in the Court's analysis is that, after plaintiff's mother informed the District that she would be not be participating in any additional IEP team meetings, the District complied with the IDEA by unilaterally formulating an IEP and then filing a due process complaint to obtain approval of same.  See Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1056 (9th Cir. 2012) (citing 20 U.S.C. § 1415(b)(6) and 34 CFR 300.507(a)) (noting that a school district has the dual options of working with parents to develop a mutually acceptable IEP or "unilaterally revis[ing] the IEP and then fil[ing] an administrative complaint to obtain approval of the proposed IEP").  The District's actions in this regard show that the District continued to engage in good faith efforts to formulate an IEP for plaintiff after plaintiff's mother declined to attend further IEP meetings.  Cf. id. at 1055 ("We have previously held that participating educational agencies cannot excuse their failure to satisfy the IDEA's procedural requirements by blaming the parents.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

extent that plaintiff failed to meet the goals set forth in the IEP, such failure does not establish a failure to implement the IEP, in light of the evidence, discussed above, showing that District staff provided the services mandated by plaintiff's IEP. This is consistent with the relevant test for evaluating a failure to implement claim, which considers whether there is "more than a minor discrepancy between the <u>services</u> a school provides to a disabled child and the <u>services</u> required by the child's IEP." <u>Van Duyn</u>, 502 F.3d at 822 (emphasis added).

The Court accordingly finds that the ALJ's decision as to plaintiff's first issue was not erroneous because she correctly determined that the District did not materially fail to implement plaintiff's IEP, either while he attended school in the District or while he was receiving home instruction.

### B.     Fading Plaintiff into a General Education Setting

Plaintiff's second issue presented before the ALJ was whether the District denied him a FAPE by "failing to fade [him] into a general education classroom, in conformity with the IEP of January 18, 2011." OAHD at 2-3. In his briefing, plaintiff does not appear to challenge the ALJ's determination on this issue. <u>See</u> Opening Br. 9-26; Reply Br. 4-15. Similarly, at the hearing, plaintiff's counsel stated that the January 2011 settlement agreement contained a goal of ultimately returning plaintiff to a general education setting, but did not argue the ALJ's finding on this issue was erroneous. RT 91.[5] Indeed, plaintiff's counsel appeared to concede at the hearing that returning plaintiff to a general education environment in late 2011 would have been unreasonable, <u>id.</u> ("[In light of] the condition of CL by the time he left the school district schools [it] would be unreasonable to assert that they should have placed him right in general education at that time.").

Moreover, even if plaintiff intends to argue that the ALJ's decision on this issue was erroneous, that argument fails because the January 18, 2011 IEP contained no provision requiring that plaintiff be faded into a general education setting. AR 1054-85 (plaintiff's January 18, 2011 IEP); <u>see also id.</u> at 1809-10 (segment of transcript of

---

[5] Citations to "RT" refer to a rough transcript of the trial held in this Court on November 15, 2013, which is on file with the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

hearing before ALJ in which plaintiff's counsel confirmed that neither settlement agreement nor IEP contained requirement to fade plaintiff into a general education setting). A failure to implement does not occur if the IEP does not require the District to take a given action in the first instance. See Van Duyn, 502 F.3d at 823 n.5. The Court therefore finds that the ALJ did not err in finding for the District on this issue.

### C. The February 3, 2012 IEP

An IEP constitutes an offer of a FAPE when it complies with the procedural and substantive requirements of the IDEA. Haw. Dep't of Educ. v. M.F. ex rel. R.F., 840 F. Supp. 2d 1214, 1226 (D. Haw. 2011) (citing Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982)). The IDEA's procedures govern the creation and implementation of IEP's. Rowley, 458 U.S. at 206-07. A procedural violation of the IDEA is actionable if it results in a "loss of educational opportunity, or seriously infringe[s] the parents' opportunity to participate in the IEP formulation process." L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2008) (citation omitted). Plaintiff does not challenge the procedural adequacy of the February 3, 2012 IEP.

A school district violates the IDEA substantively "by offering an IEP that is not reasonably calculated to enable the child to receive educational benefit." M.F., 840 F. Supp. 2d at 1226 (citing Rowley, 458 U.S. at 206-07). An IEP must provide a student with a "meaningful benefit," not merely "some educational benefit." N.B. v. Hellgate Elementary Sch. Dist., 541 F.3d 1202, 1213 (9th Cir. 2008). The "meaningful benefit" standard requires a court to determine the adequacy of the educational benefit "in relation to the potential of the child at issue." Id. (citing Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 862 (6th Cir. 2004). When applying the meaningful benefit test, courts should examine whether a program is "individualized and tailored to the unique needs of the child and reasonably calculated to produce benefits (i.e., learning progress, growth) that are significantly more than de minimus and gauged in relation to the potential of the child at issue." Blake C. v. Haw. Dep't of Educ., 593 F. Supp. 2d 1199, 1206 (D. Haw. 2009). Nevertheless, a school need not provide a special education program that maximizes the potential of a child. R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 946 (9th Cir. 2007) ("[T]he IDEA does not guarantee the absolutely best or 'potential-maximizing' education for the individual child."); see also Hellgate, 541 F.3d at 1202, 1213 n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

The IEP must also offer an education in the "least restrictive environment."  <u>Seattle School Dist., No. 1 v. B.S.</u>, 82 F.3d 1493, 1500 (9th Cir. 1996) (citing 34 CFR § 300.552(d)).  This requirement reflects "Congress's preference for educating children with disabilities in regular classrooms with their peers."  <u>Sacramento City Unified Sch. Dist. v. Rachel H. ex rel. Holland</u>, 14 F.3d 1398, 1403 (9th Cir. 1994).  The following factors are relevant to determining if an IEP offers a FAPE in the least restrictive environment ("LRE"):

> (1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [the student has] on the teacher and children in the regular class; and (4) the costs of mainstreaming [the student]

<u>Id.</u> at 1404.

      1.      Whether the February 3, 2012 IEP was an offer of a FAPE in the LRE

The ALJ found that the February 3, 2012 IEP was an offer of a FAPE in the LRE. OAHD Legal Conclusions ¶¶ 20-21.  The Court concludes that this finding was not erroneous.  With regard to the offer of a FAPE, the IEP contains a detailed description of plaintiff's "present levels of academic achievement and functional performance," including his difficulties with non-compliance and other behavioral issues.  AR 1197-98. The IEP sets forth individualized goals in the areas of reading, writing, communication, and behavior.  <u>Id.</u> at 1201-14.  The goals are particularly detailed with respect to plaintiff's "Social Emotional/Behavioral" needs, setting forth eight goals that address plaintiff's difficulties with compliance, tolerance of frustration, peer interactions, attentiveness, outbursts, physical aggression, and communication of needs.  <u>Id.</u> at 1207-14.  The BIP incorporated into this IEP also contains extensive discussion of the appropriate methods for responding to behavioral episodes.  <u>Id.</u> at 1224-27.  The IEP provides for extensive "specialized academic instruction," two hours per month of occupational therapy, two and a half hours of speech therapy, as well as academic instruction and speech therapy during the "extended school year."  <u>Id.</u> at 1230-31. Finally, the IEP provides for a one-to-one aide, supervision by an autism behavior specialist, and consultation by a nonpublic agency.  <u>Id.</u> at 2358-59; 3178-79.  The Court is persuaded by the apparent thoroughness of the IEP, and the testimony of Williams and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|------------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

Ball at the administrative hearing, AR 2831-33; 3160-76, that this IEP would have offered plaintiff "meaningful educational benefit." Hellgate, 541 F.3d at 1213.

The Court also finds that the ALJ did not err by concluding that the educational placement offered in the February 3, 2012 IEP was a placement in the LRE. This IEP provided for plaintiff to spend 45 percent of his time in a special day class and 55 percent of his time in a general education setting. AR 1232. Under the first and second Rachel H. factors, the behavioral difficulties that plaintiff experienced during his placements at Lange and Dana show that plaintiff would not have benefitted from a placement with a heavier emphasis on a general education environment. See AR 2361-62 (testimony of Stephanie Dale that placement in general education classroom for more than 55 percent of the day would not have been appropriate because plaintiff "still needs the structure of a special education classroom"); cf. Rachel H., 14 F.3d at 1404. Moreover, under the third factor, the record shows that plaintiff's presence in a general education classroom was sometimes disruptive to the teacher and the other students. See OAHD Factual Findings ¶ 33; cf. Rachel H., 14 F.3d at 1404. Under the fourth factor, the record does not show that cost influenced the District's offer of placement. Accordingly, the District's offer of placement in a general education classroom for 55 percent of the day was faithful to "Congress's preference for educating children with disabilities in regular classrooms with their peers." See Rachel H., 14 F.3d at 1403.

2. Plaintiff's Arguments

Plaintiff argues that the BIP in the February 3, 2012 IEP contains the same BIP offered in June 2011, and that this BIP was ineffective because "the District proved repeatedly incapable of following [it]." Opening Br. 15-16. According to plaintiff, it was therefore unreasonable for the District to assume that plaintiff would derive any meaningful benefit from the February 3, 2012 IEP. Id. This argument fails for two reasons. First, the BIP contained in the February 3, 2012 IEP is not similar to the BSP and BIP that were effective during various periods in 2011 because it contains "very detailed step-by-step reactive strategies" that "draw heavily from preventing an incident such as the one on October 21, 2011." OAHD Factual Findings ¶ 94; see also AR 1224-27; OAHD Legal Conclusions ¶ 20. Second, as set forth in Section IV(A) above, plaintiff did not meet his burden of establishing that the District failed to implement the January 18, 2011 IEP.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

Plaintiff also contends that the ALJ erred by denying plaintiff's request to present evidence of an IEP that predated the January 2011 settlement agreement. Opening Br. 18-19. Plaintiff argues that this evidence would have shown that the February 3, 2012 IEP was unlikely to be effective because it was similar to an IEP that predated the settlement agreement. Id. As set forth above, the Court granted plaintiff's motion to submit this evidence for consideration in the present proceeding. Dkt. #51. This evidence consists of a report of neurologist Debra Balke dated July 28, 2010, see dkt. #44, Ex. E, as well as a copy of a due process complaint submitted in a prior OAH proceeding, see id., Ex. F, correspondence between plaintiff's counsel and District personnel regarding events that occurred in October 2010, see id., Ex. G, a "Behavior Emergency Procedure Report" dated December 1, 2010, see id., Ex. H, and a school transcript dated January 26, 2011, see id., Ex. I.[6]

As an initial matter, the Court notes that this evidence is unaccompanied by a declaration or other means of authentication. Moreover, leaving aside authentication problems, these exhibits do not support plaintiff's argument, for three reasons. First, the due process complaint (Exhibit F) and correspondence written by plaintiff's counsel (contained in Exhibit G) are mere allegations.

---

[6] The remainder of the additional evidence submitted by plaintiff pertains to his performance in his current private school placement. Plaintiff argues that his success in this placement weighs in favor of plaintiff's request for reimbursement for his private school tuition. The Court does not address this argument or its supporting evidence because the Court finds that the District's February 3, 2012 IEP is an offer of a FAPE. Reimbursement is therefore unavailable to plaintiff. See M.F., 840 F. Supp. 2d at 1235. Accordingly, the District's objections to the admission of this evidence, see RT 64-66, are OVERRULED as moot. Similarly, the Court need not address the OAH hearing decision submitted by the District in its request for judicial notice, because that decision addresses the parameters for conducting an assessment of plaintiff in order to develop an appropriate IEP. The Court permitted the District to request judicial notice of this decision so that, in the event that the Court found a denial of a FAPE, the Court would be informed of the law governing such assessments when determining an appropriate remedy for plaintiff. Since the Court finds that the District prevails in this appeal, the Court need not address the issue of future assessments. Accordingly, the District's request for judicial notice is DENIED as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|---|---|---|---|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

Second, even taking these allegations as true, they do not support plaintiff's argument that previous IEP's are similar the February 3, 2012 IEP. While the due process complaint does not allege the full extent of prior IEP's, it appears that the February 3, 2012 IEP differs from prior IEP's as follows. Plaintiff never received a functional analysis assessment prior to the settlement agreement. Ex. F at 66 (alleging that the District failed to conduct a timely functional analysis assessment); id. at 60 (alleging that the December 15, 2009 IEP contains "no mention" of a functional analysis assessment). However, he has received such an assessment since that time. OAHD Factual Findings ¶¶ 18-21. Additionally, it appears that plaintiff did not receive a one-to-one aide in these prior IEP's. Id. at 65 (alleging that plaintiff "does not have any behavior support personnel that accompany him to the mainstream class to give him support when his behavior requires it"). As stated above, the February 3, 2012 IEP provides for such an aide. AR 3178-79. These differences are sufficient to persuade the Court that the prior IEP's are not substantially similar to the February 3, 2012 IEP.

Third, plaintiff does not provide argument or testimony to assist the Court in determining how Exhibits H and I support plaintiff's argument that the February 3, 2012 IEP is similar to an IEP that predated the settlement agreement. The Court is unable to determine the significance of these exhibits without additional context.[7] Accordingly, the Court is unpersuaded that IEP's predating the settlement agreement are similar to the February 3, 2012 IEP, and does not proceed to consider the significance of any potential similarity.

Plaintiff also argues that the ALJ erred by deciding that the February 3, 2012 IEP was an offer of a FAPE as of the time of the administrative hearing, as opposed to at the time it was offered. Opening Br. 20-21. This argument is contradicted by the ALJ's decision. OAHD Legal Conclusions ¶ 21 ("The evidence established that this IEP was an offer of a FAPE for Student when it was developed on February 3, 2012.").

_____

[7] At trial, the District renewed its objection to the admission of this evidence on the grounds that it predates the January 13, 2011 settlement agreement between the parties. RT 64-66. This objection is OVERRULED because the evidence is not offered to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). Rather, the evidence is offered to provide a basis for comparison with the February 3, 2012 IEP. See id. 408(b) ("The Court may admit this evidence for another purpose . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9713 CAS (PJWx) | Date | January 9, 2014 |
|----------|------------------------|------|-----------------|
| Title | C.L. V. LUCIA MAR UNIFIED SCHOOL DISTRICT | | |

## V.      CONCLUSION

In accordance with the foregoing, the Court hereby AFFIRMS the decision below.

The District's request for judicial notice is DENIED as moot.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |